UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHEY CARRASQUILLO,

                    Plaintiff,

        -against-

NATIONAL CREDIT SYSTEMS, INC., LAW
OFFICE OF BRETT M. BORLAND, P.C.,

                  Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/18/2025

24 Civ. 1029 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Shey Carrasquillo, brings this action against Defendants, National Credit Systems, Inc. ("NCS") and the Law Office of Brett M. Borland, P.C. ("Borland"), for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. See generally* Am. Compl., ECF No. 29. Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 38. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

I.    <u>Factual Background</u>[1]

    In August 2022, a Massachusetts state court entered judgment against Carrasquillo in the amount of $1,867.56 for a debt she owed to Faxon Commons Apartments ("Faxon"). Am. Compl. ¶¶ 14, 17–18. Between June and July 2023, Carrasquillo sent Faxon four money orders totaling $1,623 as partial satisfaction of the judgment. *Id.* ¶ 19. Thereafter, Carrasquillo believed that the remaining debt was $260.54, plus applicable interest. *Id.* ¶ 20.

---

[1] The following facts are taken from the amended complaint, which the Court must accept as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Faxon contracted with Defendants to collect the remaining debt. *Id.* ¶ 21. At some point prior to October 30, 2023, Carrasquillo sought clarification of the amount of the debt. *See id.* ¶ 23. By collection notice dated October 30, NCS advised Carrasquillo that she owed $5,534.20 to Faxon. *Id.* ¶ 23; NCS Ltr., ECF No. 29-2. The letter suggested that NCS "may have" already reported the debt to the major credit bureaus. NCS Ltr. Two days later, Borland sent Carrasquillo a letter in which it represented that she owed Faxon $3,922.20. Am. Compl. ¶ 25; Borland Ltr., ECF No. 29-3. Both letters suggested that the debt amounts were "verified" or "validated." *See* NCS Ltr.; Borland Ltr. Both also referred to the same creditor and client account numbers, suggesting that they were attempts to collect the same debt. Am. Compl. ¶ 26.

Fearing that debt collectors were coming after her for debt she did not owe, Carrasquillo experienced distress, anxiety, humiliation, embarrassment, difficulty sleeping, and an increased heart rate. *Id.* ¶¶ 44, 50. She was also confused as to the amount of debt that she owed Faxon, if any. *Id.* ¶¶ 50–51. Ultimately, the debt sought by Defendants was reported on Carrasquillo's credit report, *id.* ¶ 28, resulting in a lower score, *id.* ¶ 56. Carrasquillo expended time and money to clarify the debt she owes Faxon and protect against the harms of an erroneous debt-collection attempt. *Id.* ¶¶ 54–55, 57.

## II.   Procedural History

Carrasquillo commenced this action in February 2024. *See* ECF No. 1. In May, she amended her complaint. *See* Am. Compl.; ECF No. 28. The amended complaint alleges that Defendants violated various provisions of the FDCPA, specifically, 15 U.S.C. §§ 1692e, 1692f, and 1692g, which broadly prohibit debt collectors from engaging in false, misleading, or unfair debt-collection practices. Am. Compl. ¶¶ 59–76. Defendants move to dismiss the amended complaint under Rule 12(b)(1) for lack of standing, and under Rule 12(b)(6) for failure to state a

claim.  ECF No. 38; *see* Def. Mem., ECF No. 39; *see also* Pl. Mem., ECF No. 40; Def. Reply, ECF No. 45.

## DISCUSSION

I.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed where it is apparent that the Court lacks subject matter jurisdiction—that is, the statutory or constitutional power to adjudicate it.  *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id*.  On a motion to dismiss, the Court must draw all reasonable inferences in the non-movant's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II.    <u>Standing</u>

Defendants argue that Carrasquillo lacks standing to pursue her FDCPA claims and, therefore, that this Court lacks subject matter jurisdiction under Article III.  *See* Def. Mem. at 10.

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'"  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  In *TransUnion LLC v. Ramirez*, the Supreme Court explained that "an injury in law is not an injury in fact."  594 U.S. 413, 427 (2021).  That is, "plaintiffs cannot establish Article III standing by relying entirely on a statutory violation."  *Maddox*, 19 F.4th at 64.  A plaintiff must allege a concrete harm that is both independent of, and stems from, a procedural or legal violation.  The *TransUnion* Court "recognized that physical and monetary harms, along with other traditional tangible harms, readily qualify as concrete, and that certain intangible harms, such as reputational harm, qualify as well."  *Id.* at 63 (citing *TransUnion*, 594 U.S. at 425).

Defendants contend that Carrasquillo has not suffered a concrete injury caused by Defendants' actions.  Def. Mem. at 10–12.  The Court disagrees.  Although mere "confusion" caused by false or misleading debt-collection efforts is unlikely to satisfy Article III's concrete injury requirement, *see Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 141, 149 (3d Cir. 2023), courts analyzing Article III standing in the context of FDCPA violations have found concrete injuries where a defendant's alleged misrepresentation caused "a plaintiff to pay extra money, affect[ed] a plaintiff's credit, or otherwise alter[ed] a plaintiff's response to a debt," *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021).

Carrasquillo's allegations suffice to establish that she has suffered concrete harms caused by Defendants' allegedly false and misleading debt-collection notices.  She alleges that the erroneous debt amounts listed in Defendants' letters caused her to expend time and money she otherwise would not have spent to pursue a clarification of the amount owed.  Am. Compl. ¶¶ 54–55.  In the interim, her indebtedness likely increased due to interest.  *See id.* ¶ 20. Carrasquillo also suffered a concrete reputational harm that may carry financial consequences: She claims that the false debt amount now appears on her credit report and has caused a decrease in her credit score, impacting her eligibility for financial products and benefits.  *See id.* ¶¶ 28, 56.  Additionally, Carrasquillo claims to have experienced health conditions, including distress, anxiety, difficulty sleeping, and an increased heart rate, in addition to embarrassment and humiliation, caused by the fear that she is now suddenly and erroneously on the hook for thousands of dollars of debt.  *Id.* ¶¶ 44, 50.

These harms are the sorts of concrete and non-speculative injuries "traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 594 U.S. at 424 (citation omitted); *see id.* at 425 (describing "physical harms and monetary harms" as among "[t]he most obvious" of the traditionally tangible harms that "readily qualify as concrete injuries under Article III"); *see also Maddox*, 19 F.4th at 65 (describing "the false appearance that the borrower . . . is [] more indebted and less creditworthy" as a "reputational harm" that is "actionable at common law").  Carrasquillo has, therefore, sufficiently alleged that she was "concretely harmed by [Defendants'] statutory violation[s]."  *TransUnion*, 594 U.S. at 427 (emphasis omitted).  Because Carrasquillo has satisfied the requirements for Article III standing, Defendants' motion to dismiss the complaint under Rule 12(b)(1) is denied.

III.    Merits

Defendants also move to dismiss the complaint for failure to state a claim.  Def. Mem. at
12.  "In deciding whether [Carrasquillo] states a plausible FDCPA claim," the Court must "begin
with the text of the [FDCPA] statutory sections on which she relies," recognizing that the text is
to be construed "liberally to effectuate the [FDCPA's] overriding statutory purpose . . . to
eliminate abusive debt collection practices."  *Vangorden v. Second Round, L.P.*, 897 F.3d 433,
437 (2d Cir. 2018) (citation omitted).  Because the various provisions of the FDCPA are "not
mutually exclusive," "the same conduct may support claims brought under multiple
subsections."  *Id.*  For example, § 1692e prohibits a debt collector from "us[ing] any false,
deceptive, or misleading representation or means in connection with the collection of any debt."
15 U.S.C. § 1692e.  Such conduct expressly includes falsely representing "the character, amount,
or legal status of any debt," *id.* § 1692e(2), as well as "us[ing] any false representation or
deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10), both of which might
plausibly encompass false reporting of a debt amount, *see Vangorden*, 897 F.3d at 438.
Similarly, § 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to
collect or attempt to collect any debt," which the statute defines to include collecting an amount
not "expressly authorized by the agreement creating the debt or permitted by law"—*i.e.*, an
incorrect debt amount.  15 U.S.C. § 1692f(1); *see Vangorden*, 897 F.3d at 438.

"Because the FDCPA is a strict liability statute," a plaintiff is not required to plead the
intent of the debt collector or any other "*mens rea* to state plausible FDCPA claims."
*Vangorden*, 897 F.3d at 443.  However, a plaintiff must plead that any alleged violation of the
FDCPA was "material."  *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir.
2018) ("[S]tatements [made by a debt collector] must be materially false or misleading to be

actionable under the FDCPA.").  To satisfy materiality, a plaintiff must show that the challenged statement would be "false, deceptive, or misleading" from the objective perspective of the "least sophisticated consumer." *Id.* (citations omitted).  The question is how a person with less-than-average know-how would understand the debt collector's statements.  *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).  "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Cohen*, 897 F.3d at 85 (cleaned up).  If, however, the statement would tend to confuse, mislead, or deceive the least sophisticated consumer, or impede their ability to respond to or dispute the collection, the statement is actionable.  *See Russell*, 74 F.3d at 34; *Cohen*, 897 F.3d at 86.  This standard "effectuates the [FDCPA]'s purpose of limiting the suffering and anguish often inflicted by independent debt collectors" on everyday consumers, *Russell*, 74 F.3d at 34 (citation omitted), while shielding debt collectors from liability for "technical falsehoods that mislead no one," *Cohen*, 897 F.3d at 86 (citation omitted).

Defendants argue, first, that Carrasquillo has incorrectly alleged the debt amount that she owes. Def. Mem. at 14–16.  They contend that their letters were "neither misleading nor false" because the "'Balance Due' was correctly stated" on both letters.  *Id.* at 15–16.  Defendants' argument is premised on a factual dispute that has no place at the motion to dismiss stage, where the Court must assume the truth of the facts alleged.  *See Vangorden*, 897 F.3d at 437.  The factual issues Defendants press in their motion are more appropriately pursued in the context of a motion for summary judgment and are, therefore, disregarded.  *See AT&T Corp. v. ATOS IT Sols. & Servs., Inc.*, No. 21 Civ. 4550, 2022 WL 2666004, at *1 (S.D.N.Y. July 11, 2022).

Second, Defendants argue that any incorrect statements they made to Carrasquillo in their letters were not material.  Def. Mem. at 13.  They contend that the least sophisticated consumer

would not be misled by their letters because "[t]here was nothing in either letter to suggest that the balance would increase." *Id.* at 14. Additionally, the letters "unambiguously conveyed information concerning the amount owed in a way that the 'least sophisticated consumer' could not misconstrue." *Id.* at 16.

Defendants' arguments are unpersuasive. In *Vangorden*, the Second Circuit held that allegations that a debt collector's letter misstated the plaintiff's debt obligation and "requested payment of the [d]ebt" stated a claim under §§ 1692e and 1692f for making a "false representation" and attempting to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law." 897 F.3d at 438. Carrasquillo's claims are no different. She alleges that Defendants sent her collection notices seeking repayment of incorrect debt amounts. Moreover, the letters implied that the indebtedness was "verified" or "validated." *See* NCS Ltr.; Borland Ltr. As the Second Circuit has recognized, "even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA." *Vangorden*, 897 F.3d at 442. Because Defendants' letters openly misstated Carrasquillo's debt obligation while insisting that the amount was correct, it is clear that the least sophisticated consumer would be misled or deceived by the letters' false statements. *See id.*

Defendants insist that there is a plausible explanation for the debt amounts displayed in the letters: "[T]he letters sent by two separate entities may have decreasing balances over time" due to "dispute[s] and payments made by [Carrasquillo]." Def. Mem. at 17; *see id.* at 14. Even if that explanation were true, it would not be the only conclusion the least sophisticated consumer could draw from the letters. Carrasquillo alleges that the correct debt amount is $260.54 plus applicable interest. Am. Compl. ¶ 20. In that context, the NCS and Borland letters—standing alone or taken together—could mislead a least sophisticated consumer into

believing that they owe significantly more than they previously knew.  A consumer *might* take the view propounded by Defendants that the amount decreased across the two letters due to a payment.  But "a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate," *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (citation omitted), and here, any interpretation is misleading because, as Carrasquillo alleges, the balance shown on each letter is incorrect, even if it did decrease from one letter to the next, *Vangorden*, 897 F.3d at 442.

Third, Defendants contend that "there is no basis in law or fact from which to imply that NCS is liable for (or can control) the actions of Borland, and vice-versa."  Def. Mem. at 14.  Defendants seem to suggest that Carrasquillo's complaint alleges that one of the defendants caused the other to violate the FDCPA or acted on the other's behalf in sending Carrasquillo the letters.  *See id.* at 13–14.  No such allegations appear in the complaint, and Carrasquillo disclaims that she has alleged liability based on "agency" principles or theories of "vicarious liability."  *Id.* at 13–14; *see* Pl. Mem. at 11.  Carrasquillo claims that each defendant separately and independently violated the FDCPA by sending her a collection notice that misstated the existence or amount of her indebtedness.  Pl. Mem. at 11; *see, e.g.*, Am. Compl. ¶¶ 65, 71, 76.  Defendants' arguments regarding agency law and vicarious liability are, therefore, inapplicable.

Accordingly, the Court finds that Carrasquillo has adequately alleged that the letters sent by NCS and Borland contained false or misleading statements that could mislead the least sophisticated consumer regarding the debt obligation.  *See Vangorden*, 897 F.3d at 443.  Defendants' motion to dismiss Carrasquillo's complaint for failure to state a claim is, therefore, denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED.  The Clerk of

Court is respectfully directed to terminate the motion at ECF No. 38.

SO ORDERED.

Dated: February 18, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge